IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

JASON FIALKOFF; and JEFF KNIPE,

    Plaintiffs,

vs.

VGM GROUP, INC.; COMPASS GROUP USA, INC.; and FOODBUY, LLC,

    Defendants.

No. 19-CV-2041 CJW

**MEMORANDUM OPINION AND ORDER**

_____

This matter is before the Court on defendants Compass Group USA, Inc. ("Compass") and Foodbuy LLC's ("Foodbuy") Motion to Dismiss.[1] (Doc. 12). Defendants argue this Court should dismiss counts three through eight of plaintiffs Jason Fialkoff and Jeff Knipe's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (*Id.*). Plaintiffs timely filed a resistance to defendants' motion. (Doc. 18). Defendants timely filed a reply brief in response. (Doc. 23). For the following reasons, the motion is **granted in part** and **denied in part**.

## I.    BACKGROUND

Plaintiffs allege they were independent contractors employed to facilitate business between VGM, a company that provided rebates and incentive programs to restaurant chains, and the restaurant chains themselves. (Doc. 1, at 2). Plaintiffs were formerly

---

[1] Defendant VGM Group, Inc. ("VGM") does not join in the Motion to Dismiss.

employed as independent contractors for JKI Client Rewards before it was acquired by VGM and rebranded as VGM Client Rewards. (*Id.*, at 1-2). At the time of the acquisition, plaintiffs signed Independent Contractor Agreements with VGM which required plaintiffs to solicit new customers to participate in VGM's incentive programs, maintain relationships with existing clients, meet with clients, and present new opportunities to clients. (*Id.*, at 3). Under the agreements, plaintiffs would be paid a percentage of the rebates VGM received from clients. (*Id.*). Plaintiffs allege they maintained the Independent Contractor Agreements with VGM from approximately December 17, 2010, through January 1, 2019. (*Id.*, at 4).

Plaintiffs further allege that VGM began receiving additional money for client purchases sold under private labels. (*Id.*, at 4). These additional payments, however, were not paid to plaintiffs as they claim was required by their Independent Contractor agreements. (*Id.*, at 7). On January 1, 2019, Compass and its subsidiary Foodbuy purchased VGM Client Rewards and all its related assets. (*Id.*, at 4). Following this acquisition, defendants offered plaintiffs an opportunity to continue their work under Consulting Agreements. (*Id.*, at 10). Defendants also offered plaintiffs settlement agreements to resolve the issue of rebates that had not been paid by VGM. (*Id.*). Plaintiffs did not sign the Consulting Agreements or the settlement agreements. (*Id.*, at 11).

Plaintiffs brought an eight-count complaint against VGM and defendants alleging: 1) breach of contract; 2) fraud; 3) violation of Florida Deceptive and Unfair Trade Practices Act; 4) defamation; 5) tortious interference with business relationships; 6) a request for injunctive relief; 7) breach of contract; and 8) breach of contract. (Doc. 1). Plaintiffs brought counts one and two only against defendant VGM. (*Id.*, at 15-16). Counts three through six were brought against Compass and Foodbuy jointly. (*Id.*, at 17-20). Counts seven and eight for breach of contract were brought against Compass

and Foodbuy individually. (*Id.*, at 20-22). In response, defendants brought this motion to dismiss counts three through eight for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 12).

## II. APPLICABLE LAW

Federal Rule of Civil Procedure 8(a) provides that a complaint must contain "a short and plain statement of the grounds for the court's jurisdiction . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . and a demand for the relief sought." Rule 12(b)(6) provides that a party may assert the defense of failure to state a claim upon which relief can be granted by motion and that "[a] motion asserting [this] defense[ ] must be made before pleading if a responsive pleading is allowed." "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations and quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level," but "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely." *Id.*, at 555-56. Indeed, a theory asserted need only be plausible, which requires "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the conduct alleged]." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has *alleged*—but has not *shown*—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added) (citation and internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* When a pleading contains no more

than conclusions, however, those conclusions are not entitled to the assumption of truth. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* "[T]here is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim." *Leimer v. State Mut. Life Assur. Co. of Worcester*, 108 F.2d 302, 306 (8th Cir. 1940).

### III.  DISCUSSION

Defendant argues the Court should grant its motion to dismiss because "[p]laintiffs fail to allege valid claims that are plausible on their face against [Compass and Foodbuy]." (Doc. 13, at 2). Plaintiffs bring six counts against defendants in their complaint: 1) violation of Florida Deceptive and Unfair Trade Practices Act; 2) defamation; 3) tortious interference with a business relationship; 4) request for injunctive relief; 5) breach of contract claim against Compass; and 6) breach of contract against Foodbuy. For the following reasons, defendants' Rule 12(b)(6) motion to dismiss count three (Florida Deceptive and Unfair Trade Practices Act), and count six (injunctive relief) is granted. Defendants' motion to dismiss count four (defamation), count five (interference with a business relation), and counts seven and eight (breach of contract) is denied.

Defendants itemize each of the six counts and detail why they allege each count to be deficient. The Court is not prepared to determine which substantive body of law applies to the claims raised, but defendants challenge the complaint primarily based on Iowa law. (Doc. 13). Because Iowa law could be proven to govern the claims at issue, the Court will apply Iowa law for the sole purpose of determining the sufficiency of the complaint under Rule 12(b)(6).

### *1.     Violation of Florida Deceptive and Unfair Trade Practices Act*

The Court first considers the violation of Florida Deceptive and Unfair Trade Practices Act claim (Count Three).  The Court finds the complaint does not provide sufficient factual information "to raise a reasonable expectation that discovery will reveal evidence [of the conduct alleged]." *Twombly*, 550 U.S. at 555-56.

The Florida Deceptive and Unfair Trade Practices Act's ("FDUTPA") purpose is "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.202(2).  "To state a claim under FDUTPA, a party must allege (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.*, No. 3:16-cv-186-J-34JRK, 2018 WL 905752, at *14 (M.D. Fla. Feb. 15, 2018).  "An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, while a deceptive act occurs if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Sandshaker Lounge & Package Store LLC v. RKR Beverage Inc*, No. 3:17-cv-00686-MCR-CJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018).  An entity does not need "to be a consumer to have standing to bring a FDUTPA claim" but a claimant does "have to prove that *there was an injury or detriment to consumers* in order to satisfy all of the elements of a FDUTPA claim." *Caribbean Cruise Line, Inc. v. Better Bus. Bureau of Palm Beach Cty., Inc.*, 169 So.3d 164, 170 (Fla. Dist. Ct. App. 2015) (emphasis in original).

Defendants contend that plaintiffs' FDUTPA claim must fail because plaintiffs did not explain how "the acts that they allege were 'unfair' or 'deceptive' caused injuries to customers."  (Doc. 13, at 14).  Specifically, defendants claim any alleged deceptive

conduct was private and not customer facing, so customers could not have been misled or deceived. (*Id.*, at 14-15). Defendants also claim that allegedly deceptive advertising related to increased rebates could not have injured customers because the customers were actually benefitted by receiving greater rebates. (*Id.*, at 15). In sum, defendants argue customers have not been harmed and thus plaintiffs cannot state a FDUTPA claim. (*Id.*, at 15-16). Plaintiffs, however, allege consumers were harmed when defendants concealed information about misappropriated rebate revenues. (*Id.*, at 15). Specifically, plaintiffs allege this false information "harmed consumers by depriving them of the ability to make informed choices about where to do business and facts that would allow them to pursue VGM for money they are owed." (*Id.*, at 16).

Although plaintiffs argue that consumers may have suffered harm, they do not allege any facts supporting a plausible inference that any consumers have or are likely to have suffered actual damages. It is conceivable a customer may have made a different choice about whom they would like to conduct business. But plaintiffs' allegations do not suggest any consumers made a different choice or were actually harmed by their decision to continue conducting business with defendants. Defendants claim consumers actually benefitted from the alleged conduct. The Court does not need to determine whether consumers benefitted from the alleged conduct because it is sufficient that plaintiffs did not show consumers were harmed.

For the reasons discussed above, defendants' motion to dismiss plaintiffs' FDUTPA claim is granted.

### 2. *Defamation*

The Court next turns to the defamation claim raised against defendants (Count Four). The Court finds the complaint provides sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556.

6

Iowa defamation law consists of "the twin torts of libel and slander" and involves "the publication of statements that tend to injure a person's reputation and good name." *Theisen v. Covenant Med. Ctr., Inc.*, 636 N.W.2d 74, 83 (Iowa 2001) (internal citation and quotation marks omitted). Defamation is a violation of an individual's right "to enjoy their reputation unimpaired by false and defamatory attacks." *Schlegel v. Ottumwa Courier,* 585 N.W.2d 217, 221 (Iowa 1998) (quoting 50 Am. Jur.2d *Libel and Slader* § 2, at 338-39 (1995)). To be successful on a defamation claim "a plaintiff must show the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff." *Taggart v. Drake Univ.*, 549 N.W. 2d 796, 802 (Iowa 1996).

"Iowa courts recognize 'two types of [defamation]: [defamation] per se and [defamation] per quod.'" *Accent Media, Inc. v. Young*, 12-CV-07-LRR, 2013 WL 12140468, at *9 (N.D. Iowa Sept. 11, 2013) (alterations in original) (quoting *Schlegel*, 585 N.W.2d at 222). Plaintiffs allege defendants made untrue written and verbal statements of fact to their clients that constitutes defamation per se. (Doc. 1, at 18). Plaintiffs refer specifically to email correspondence from defendants to plaintiffs' clients that stated "[t]hose who previously managed your account were **highly commissioned independent contractors**. . . . Because no commissions will be paid to employees we are now able to double your normal rebate checks" and "[w]e will also provide a dedicated **Non-Commissioned Account Manager**, to manage your account." (Doc. 1, at 12) (emphasis in original). Plaintiffs also refer to phone calls made by defendants to plaintiffs' clients during which defendants communicated that rebates would increase solely because independent contractors were no longer being used and that plaintiffs were previously responsible for setting high rebates. (*Id.*, at 13-14). Plaintiffs allege these statements resulted in their clients signing with other partners. (*Id.*, at 15). Alternatively, if the statements are not defamation per se, plaintiffs allege defendants' statements are defamation per quod.

7

"A statement is [defamation] per se if it has a natural tendency to provoke the plaintiff to wrath or expose him to public hatred, contempt, or ridicule, or to deprive him of the benefit of public confidence or social intercourse." *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996). A plaintiff does not need to prove "the elements of malice, falsity, or damages" if a statement is defamation per se. *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). A plaintiff must, however, prove:

> (1) the defendant made the statements; (2) the defendant communicated the statements to someone other than the plaintiff; and (3) the statements would reasonably be understood to be an expression which would attack a person's integrity or moral character, expose the person to public hatred, contempt or ridicule, deprive the person of the benefits of public confidence and social dealings or injure the plaintiff in the maintenance of his or her business.

*Accent Media*, 2013 WL 12140468, at *9 (citing Iowa Civil Jury Instruction 2100).

"A statement is [defamation] per quod if it is necessary to refer to facts or circumstances beyond the words actually used to establish the defamation." *Johnson*, 542 N.W.2d at 510. To prove defamation per quod under Iowa law, a plaintiff must show:

> (1) the defendant made a written or oral statement concerning the plaintiff; (2) the statement was false; (3) the defendant made the statement with malice; (4) the defendant communicated the statement to someone other than the plaintiff; (5) the statement tended to injure the reputation of the plaintiff, expose the plaintiff to public hatred, contempt or ridicule or injure the plaintiff in his or her efforts to maintain his or her business; (6) the statement caused damage to the plaintiff; and (7) the amount of damage.

*Accent Media*, 2013 WL 12140468, at *10 (citing Iowa Civil Jury Instruction 2100).

### a. Application

In the Motion to Dismiss, defendants argue the emails and messages referring to plaintiffs as highly commissioned contractors and statements about non-commissioned managers taking over accounts is not defamation per se. Defendants argue these

8

statements do not "attack [plaintiffs'] integrity or moral character, expose [plaintiffs] to public hatred, contempt or ridicule, deprive the [plaintiffs] of the benefits of public confidence and social dealings or injure [plaintiffs] in the maintenance of [their] business." (Doc. 13, at 10). In short, the statements do not have a defamatory effect as a matter of law. (*Id.*). Defendants also argue the statements are not defamation per quod because the statements are neither false nor malicious. (*Id.*, at 11-12). Because the plaintiffs have not provided sufficient facts to prove the necessary elements of falsity and malice, defendants argue the defamation claim should be dismissed.

Plaintiffs, however, argue the statements were defamation per se because the statements "injure[d] the plaintiffs in the maintenance of [their] business." (Doc.18, at 8). Plaintiffs argue the language used, combined with the bolded type in the emails, were made to provoke a reaction, specifically that the recipient should be appalled by high commission prices. (*Id.*, at 10). Plaintiffs also allege defendants falsely placed blame on plaintiffs for misappropriation of rebate revenue, which gives rise to a claim for defamation per se. (*Id.*, at 14-15). In the alternative, plaintiffs argue the statements are defamation per quod. Plaintiffs argue the statements were false because there were several reasons rebates would be increasing unrelated to the removal of independent contractors. (*Id.*, at 12-13). Plaintiffs also note the comments were malicious because they were made in the context of trying to deter clients from doing business with plaintiffs in a competitive industry. (*Id.*, at 13). In short, the statements were false and their context indicates malice.

The Court will first decide whether the alleged defamatory remarks constitute defamation per se. The only element at issue is whether the statements "would reasonably be understood to be an expression which would attack a person's integrity or moral character, expose the person to public hatred, contempt or ridicule, deprive the person of the benefits of public confidence and social dealings or injure the plaintiff in the

maintenance of his or her business." *Accent Media*, 2013 WL 12140468, at *10. The statements at issue cannot reasonably be understood to be an attack that would injure plaintiffs in the maintenance of their business. Plaintiffs point to the fact that certain words were in bold print to support their argument that the statements were intended to provoke a reaction from the reader but provide no additional facts to support this allegation. (Doc. 18, at 10). Without further support, the bold print appears to be no more than an attempt by defendants to highlight to their customers why they will be getting better deals. Moreover, the statements do not have a "natural tendency to provoke the plaintiff to wrath" or deprive them of social intercourse. For these reasons, the Court finds plaintiffs have not alleged facts showing the statements were defamation per se.

On the other hand, the Court finds plaintiffs have alleged facts that, if true, could show the statements constitute defamation per quod. The only three elements of defamation per quod challenged by defendants are the elements of falsity, malice, and damages. (Doc. 13, at 11-12). First, plaintiffs have alleged sufficient facts to support their assertion that the statements were false. Specifically, plaintiffs have alleged facts that, if true, would show that client rebates would increase for reasons other than that they were using independent contractors. (Doc. 1, at 2-3). Plaintiffs have also pled sufficient facts to show the statements made by defendants telling clients that plaintiffs were responsible for high rebate payments was false. Specifically, plaintiffs were not given any information about the program and would not be able to answer clients' questions. (*Id.*, at 6). Second, plaintiffs have pled facts sufficient to raise the possibility of malice above a speculative level. Plaintiffs specifically pled that the bold print and knowing use of false statements indicates malice. Finally, plaintiffs pled sufficient facts to show they may have been damaged by defendants' statements by alleging their longstanding clients had begun questioning them and caused the clients not to sign with plaintiffs' new rebate processing partner. (*Id.*, at 15).

10

For the reasons discussed above, defendants' motion to dismiss plaintiffs' claim of defamation is denied.

### 3. *Tortious Interference with Business Relationships*

Considering next plaintiffs' tortious interference with business relationships claim (Count Five), the Court finds the complaint provides sufficient factual information "to raise a reasonable expectation that discovery will reveal evidence" of tortious interference with a business relationship. *Twombly*, 550 U.S. at 545.

Under Iowa law, a claim of tortious interference with existing contracts requires:

> (1) the plaintiff had a valid contractual relationship with a third party; (2) the defendant knew of that relationship; (3) the defendant intentionally interfered with that relationship; (4) the defendant's action caused the third party to breach its contractual relationship with the plaintiff or disrupted the contractual relationship between the third party and the plaintiff by making performance more burdensome or expensive; and (5) the amount of damages.

*Gen. Elec. Capital Corp. v. Commercial Servs. Grp., Inc.*, 485 F. Supp. 2d 1015, 1025 (N.D. Iowa 2007). A claim of tortious interference with a prospective business advantage or contractual relationship requires: "(1) the plaintiff had a prospective contractual or business relationship; (2) the defendant knew of the prospective relationship; (3) the defendant intentionally and improperly interfered with the relationship; (4) the defendant's interference caused the relationship to fail to materialize; and (5) the amount of resulting damages." *Id*.

Defendants argue that for a tortious interference with a business relationship claim to succeed, the plaintiff must show the defendant had a purpose that its interference would financially injure or destroy the plaintiff. (Doc. 13, at 16). Defendants further argue that even if plaintiffs do not need to show such a purpose, plaintiffs still must allege: "(1) [plaintiffs] had a contract with a third party; (2) [defendants] knew of the contract; (3) [defendants] intentionally and improperly interfered with the contract; (4) the interference

caused the third party not to perform, or made performance burdensome or expensive; and (5) damages to the [p]laintiffs resulted." (Doc. 23, at 4). In short, defendants claim plaintiffs' complaint is deficient because it does not allege facts supporting any of these elements and it cannot identify a single client that terminated its relationship with plaintiff because of defendants' alleged actions. (*Id.*). Plaintiffs argue all the elements of tortious interference with an existing business relationship have been met because plaintiffs had established business relations with clients, defendants were aware of these relationships, defendants intentionally interfered, and plaintiffs were damaged as a result.

The Court finds plaintiffs have sufficiently pled facts to establish that they did have established business relationships and that defendants knew of the relationships. (Doc. 1, at 18). Plaintiffs have also alleged sufficient facts that, if true, would prove that defendants intentionally and improperly interfered with those business relations. Plaintiffs allege that defendants' alleged defamatory and false statements intentionally and improperly interfered with their business relations by misrepresenting plaintiffs' and defendants' role in setting up DPL rebates so that clients would work with defendants. (Doc. 1, at 15, ¶¶ 106-107). Likewise, plaintiffs' alleged facts in the complaint that defendants' conduct "damaged relationships between [plaintiffs] and certain of their clients, and/or have had the effect of causing certain clients to stop doing business with [plaintiffs]." (*Id.*, at ¶ 108). For purposes of a complaint, this is sufficient to state a claim without the need to specifically identify the clients. Whether the claim can survive a motion for summary judgment may be another matter altogether if, in fact, plaintiffs are unable to identify any clients lost as a result of defendants' conduct.

For these reasons, the motion to dismiss plaintiffs' claim for tortious interference with a business relationship is denied.

### *4.  Injunctive Relief*

It is well-settled that a "claim for injunctive relief is a request for a remedy, not a separate cause of action." *Christensen v. PennyMac Loan Servs., LLC*, 988 F. Supp. 2d 1036, 1046 (D. Minn. 2013). Standing alone, a claim for injunctive relief would not survive a 12(b)(6) motion to dismiss. *See Henke v. Arco Midcon, LLC*, 750 F. Supp. 2d 1052, 1060 (E.D. Mo. 2010). Plaintiffs may, however, "seek injunctive relief as part of their prayer for relief in another claim." *Id.* For a claim for injunctive relief to survive a Rule 12(b)(6) motion, a plaintiff must sufficiently plead the elements of both a permanent injunction and the claim upon which the injunction rests. *See Doe v. Christie*, 33 F. Supp. 3d 518, 522 n.3 (D.N.J. 2014).

Plaintiffs' request for injunctive relief is based on its claim for defamation. This is evidenced by plaintiffs' statements that the "defamation of [plaintiffs] have caused clients and business relations of [plaintiffs] to question their ability to handle purchasing accounts and have made it difficult for [plaintiffs] to enjoy their business relationships." (Doc. 1, at 19). Plaintiffs then immediately allege they "lack an adequate remedy at law to prevent [defendants] from continuing to injure their business relations." (*Id.*). The Court has already determined the pleadings provide a sufficient basis for the defamation per quod claim to survive the 12(b)(6) motion. Plaintiffs have thus established the elements of the claim underlying their request for injunctive relief.

Although plaintiffs have sufficiently pled the underlying defamation claim, plaintiffs must still plead the elements for injunctive relief. "The basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies." *Grasso Enters., LLC v. Express Scripts, Inc.*, 809 F.3d 1033, 1039 (8th Cir. 2016). Further, "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). The four factors a plaintiff must show are:

(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy of equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

*Id.* Plaintiffs do not specifically request a permanent injunction, but their request that defendants be prohibited from making statements is for an indefinite time, which implies permanency.

A plaintiff seeking injunctive relief must first show that it has suffered an irreparable injury. *Id.* Plaintiffs here alleged defendants' wrongful acts "have caused clients and business relations of [plaintiffs] to question their ability to handle their purchasing accounts" and "result[ed] in those clients' decisions not to sign with [plaintiffs'] new rebate processing partner." (Doc. 1, at 15, 19). Plaintiffs further allege they "will suffer irreparable harm absent the entry of injunctive relief." (*Id.*, at 20). Plaintiffs have sufficiently pled that they have had difficulty retaining clients because of statements made by defendants, but plaintiffs fail to show how this constitutes irreparable harm. Plaintiffs do not allege that they will not be able to regain the confidence of former clients and develop lasting relationships with new clients. This could create additional expenses and difficulties, but expenses and difficulties are not sufficient on their own to constitute irreparable harm. *See Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). In sum, although plaintiffs have demonstrated harm, plaintiffs have not plausibly alleged that this harm is irreparable.

Second, a plaintiff must show that remedies available at law are inadequate. Plaintiffs allege that they "lack an adequate remedy at law to prevent [defendants] from continuing to injure their business relations and correct the harm that has already been done." (Doc.1, at 19). Plaintiffs' conclusory statement, however, is not supported by

any facts.  The Court cannot find any facts in the complaint that would allow it to infer that a remedy at law, such as damages, would be inadequate.

Third, a plaintiff must show that, after considering the balance of hardships between the plaintiffs and defendants, an injunctive remedy is necessary.  Plaintiffs do not specifically address this factor in their complaint.  The Court, however, can infer plaintiffs are alleging they will suffer a greater hardship than defendants.  Plaintiffs allege they have lost business and their request for relief only requires defendants to refrain from making statements to plaintiffs' clients and to correct prior misstatements.  (Doc. 1, at 19-20).  Even if the Court can infer this to mean plaintiffs are alleging a greater hardship, the other factors for injunctive relief have not been met.

Fourth, a plaintiff must show the public interest will not be disserved by an injunction.  Plaintiffs address this factor for injunctive relief by stating "the injunctive relief . . . will serve the public interest." (Doc. 1, at 20).  Plaintiffs' conclusory statement is not supported by any facts and the Court cannot find any facts in the complaint that would allow it to infer that the public interest will not be disserved by an injunction.

For these reasons, the motion to dismiss plaintiffs' request for injunctive relief is granted.

### 5. *Breach of Contract Claims Against Compass and Foodbuy*

Lastly, the Court must consider whether plaintiffs' claim for breach of contract against both Compass and Foodbuy survives defendants' motion to dismiss.  Defendants contend that plaintiffs' breach of contract claim fails for two reasons.  (Doc. 13, at 17).  First, defendants argue "under the terms of the Contractor Agreements, [p]laintiffs are not entitled to recover any fees because [p]laintiffs . . . terminated [the agreements]." (*Id.*).  Second, defendants contend plaintiffs materially breached their Independent Contractor Agreements by violating the non-compete provision and are not entitled to recovery for breach of contract.  (*Id.*).  Defendants support their contention by citing

15

Iowa case law that prohibits parties who have materially breached a contract to recover under the contract. (*Id.*, at 19) (citing *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998)).

Plaintiffs, however, contend that defendants repudiated the Independent Contactor Agreements. Plaintiffs allege that defendants' action were "sufficiently positive to be reasonably interpreted to mean the party will not or cannot perform." (Doc. 18, at 4 (quoting *Pavone v. Kirke*, 807 N.W.2d 828, 833 (Iowa 2011))). Plaintiffs claim that because defendants repudiated the contracts, plaintiffs are entitled to recovery on the contracts. Plaintiffs also contend that defendants materially breached the contracts when defendants did not pay required fees to plaintiffs. Because defendants materially breached the contracts, plaintiffs assert they were excused from their contractual obligations as well.

Plaintiffs argue they reasonably believed their contracts with defendants were both repudiated and breached, causing plaintiffs to move on to different work in the same field. Defendants, on the other hand, argue they did not believe they had repudiated or breached the contracts. Defendants instead assert that they were working with plaintiffs to agree on new terms that would continue their professional relationship. Based on plaintiffs' pleadings, it is plausible plaintiffs believed the Independent Contractor Agreements had been either repudiated or breached. For example, plaintiffs' allegations surrounding negotiations for a new contract provide enough support for plaintiffs to have reasonably concluded their contracts were terminated. (Doc. 1, at 8-10). Taken as true, these facts are sufficient to raise the possibility that defendants breached the contracts beyond a speculative level.

For these reasons, the motion to dismiss plaintiffs' breach of contract claims is denied.

## IV. CONCLUSION

For the reasons set forth above, defendants' Rule 12(b)(6) motion to dismiss count three (Florida Deceptive and Unfair Trade Practices Act), and count six (injunctive relief) is **granted**. Defendants' motion to dismiss count four (defamation), count five (interference with a business relation), and counts seven and eight (breach of contract) is **denied**.

**IT IS SO ORDERED** this 11th day of October, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa